# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

CESAR A. BORGES,

        Petitioner,

 v.

MARK BRADT, Superintendent,

        Respondent.

9:14-CV-60 (GTS/ATB)

CESAR A. BORGES, Petitioner pro se
ALYSON J. GILL, AAG, for Respondent

ANDREW T. BAXTER, U.S. MAGISTRATE JUDGE

## REPORT-RECOMMENDATION

Petitioner filed this application for a writ of habeas corpus in the Western District of New York, pursuant to 28 U.S.C. § 2254. (Dkt. No. 1). The petition was subsequently transferred to this district (Dkt. No. 2), and was referred to me for Report and Recommendation by the Honorable Glenn T. Suddaby, United States District Judge, pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. Local Rule 72.3(c).

Petitioner challenges a judgment of conviction, entered in New York State Supreme Court, Onondaga County on February 23, 2004, after petitioner plead guilty to Murder, Second Degree. (Petition ("Pet.") at ¶ 2). Petitioner was sentenced on May 28, 2004 to a prison term of 22 years to life imprisonment. (Pet. ¶ 3). Petitioner did not appeal his conviction. On April 25, 2011, petitioner filed a pro se motion for a writ of error coram nobis in the Appellate Division, Fourth Department, requesting permission to file a late notice of appeal which was denied on May 26, 2011. The New York Court of Appeals denied leave to appeal on August 16, 2011. Petitioner indicates that he

mailed this petition to the court on November 29, 2013. (Pet. at CM/ECF p.15).

Petitioner raises one ground for the court's review. He claims that he was denied his right to file a notice of appeal due to the ineffective assistance of counsel. (Pet. ¶ 12 & 12(a)). Respondent argues for denial of the petition, claiming that the petition is untimely, and in the alternative, that petitioner's claim is meritless. (Dkt. No. 9). Respondent has also filed the relevant state court records. (Dkt. No. 10). For the following reasons, this court agrees that the petition is untimely and will recommend dismissal.

## DISCUSSION

I. **Statute of Limitations**

   A. **Legal Standard**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") established a one-year statute of limitations for prisoners to seek federal review of their state court criminal convictions. 28 U.S.C. § 2244(d)(1). The one year period generally begins to run from the date on which the state criminal conviction became final by the conclusion of direct review or by the expiration of the time to seek direct review. *Id.* § 2244(d)(1) (A). *If a direct appeal is filed*, the judgment of conviction becomes final ninety days after the date that the New York Court of Appeals denies leave to appeal.[1] *Williams v. Artuz*, 237 F.3d 147, 150–51 (2d Cir. 2001).

---

[1] The ninety-day time period is the time that a petitioner would have to seek direct review of his conviction in the United States Supreme Court and must be counted for purposes of the AEDPA statute of limitations. *Williams v. Artuz*, 237 F.3d at 150 51 (discussing the statutory requirement that the statute of limitations begins to run "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review")

2

Other dates from which the limitations period may start running are the date on which an unconstitutional, state-created impediment to filing a habeas petition is removed; the date on which the constitutional right on which petitioner bases his habeas application was initially recognized by the Supreme Court, if the right was newly recognized *and* made retroactively applicable; or the date on which the factual predicate for the claim or claims presented could have been discovered through the exercise of due diligence. 28 U.S.C. § 2244(d)(1)(B), (C), and (D). In *Duncan v. Walker*, 533 U.S. 167, 179 (2001), the Supreme Court stated that this statute of limitations "reduces the potential for delay on the road to finality by restricting the time that a prospective federal habeas petitioner has in which to seek federal habeas review."

The AEDPA, provides that the one year limitations period will be tolled while a "properly filed" state court post-conviction motion is pending. 28 U.S.C. § 2244(d)(2). The tolling provision only applies if the post-conviction motion was "properly filed" and if it was pending within the one-year limitations period. *Smith v. McGinnis*, 208 F.2d 13, 16 (2d Cir. 2000). Simply filing a post-conviction motion does not re-start the limitations period, and it excludes from the limitations period only the time that the motion remained undecided, including the time during which an appeal from the denial of the motion was taken. *See Bennett v. Artuz*, 199 F.3d 116, 120–21 (2d Cir. 1999), *affd*, 531 U.S. 4 (2000).

Although the AEDPA does not provide that the statute of limitations may be tolled for any reasons other than the pendency of a state post-conviction motion, in

---

(citing 28 U.S.C. § 2244(d)(1)(A)).

3

"extraordinary circumstances," the court may equitably toll the limitations period. *Holland v. Florida*, 560 U.S. 631, 649 (2010). In order to warrant equitable tolling, petitioner must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Id.* (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)) (internal quotation marks omitted). The Second Circuit has also determined that courts should consider a claim of "actual innocence" as a basis for excusing late filing under the AEDPA. *See Rivas v. Fischer*, 687 F.3d 514, 548 (2d Cir. 2012).

**B.    Application**

There is no dispute regarding the dates of the state court proceedings in this case. Petitioner pled guilty to the Murder charge. Petitioner states that he was sentenced on May 28, 2004. On May 27, 2004, petitioner's attorney gave petitioner a document entitled:

NOTICE OF RIGHT TO APPEAL
22 NYCRR 1011.11(A)

(Dkt. No. 10-1 at 3).[2] The form is essentially a "statement" by the individual's attorney. The first two paragraphs of this notice inform the defendant of his right to appeal, where the notice must be filed, and upon whom the notice must be served. (*Id.* ¶¶ 1-2). The form also states that if the defendant does wish to appeal, he must "CHECK THE FIRST BOX ON THE FORM BELOW, SIGN THE FORM, AND GIVE IT TO THE COURT CLERK WHO WILL GIVE ME A COPY FOR MY FILE. **I WILL FILE**

---

[2] Respondent has filed copies of the available state court records in this case. (Dkt. No. 10).

**THE NOTICE OF APPEAL FOR YOU**." (*Id.* ¶ 3) (emphasis added). Finally, the notice informs the defendant that, if he cannot pay for an attorney, he may apply to the Appellate Division, Fourth Department to have an attorney assigned by the court. (*Id.* ¶ 4). The top of the form is signed by petitioner's attorney, Dennis Claus, who was retained counsel for petitioner. The form indicates that the sentencing was to take place on May 28, 2004. (*Id.*)

Finally, the form asks the defendant to check one of the boxes "below," sign the form, and give it to the Court clerk. The form also states that "UNLESS YOU ADVISE YOUR ATTORNEY THAT YOU WANT TO APPEAL, YOUR ATTORNEY DOES NOT HAVE TO FILE AND SERVE THE NOTICE OF APPEAL." (*Id.*) There are two boxes below this. One says: "I WANT TO APPEAL," and the second box says: "I DO NOT WANT TO APPEAL." (*Id.*) The box indicating that petitioner did not want to appeal is marked with a large "X." The form was signed by both petitioner and his attorney on May 27, 2004. (*Id.*)

Petitioner did not file a notice of appeal, either through counsel or on his own. On April 25, 2011, petitioner filed a motion for a "Writ of Error Coram Nobis" in the Appellate Division, Fourth Department. (Dkt. No. 10-1 at 12-19). In this motion, petitioner asked to be granted permission to file a "late notice of appeal" "upon the ground that . . . defendant's failure to file a notice of appeal in a timely fashion resulted from the conduct of defendant's counsel, and a clear misunderstanding by the defendant . . . ." (*Id.* at 12). In his affidavit in support of the motion, petitioner claimed that his attorney did not explain the rights petitioner was waiving, and petitioner did not

5

understand that by executing the waiver, he would be prevented from challenging his sentence (as opposed to the plea itself). (Dkt. No. 10-1 at ¶¶ 8-14).

Petitioner acknowledges the existence of the signed Notice of Right to Appeal, but argues that he completed the form on the day before sentencing, and the Judge presiding over the case did not even mention the right to appeal or any waiver during sentencing.[3] Petitioner was sentenced on May 28, 2004. Because he did not file a direct appeal, his conviction became final thirty days later, on June 28, 2004.[4] *See Levola v. New York State Div. of Parole*, No. 2014 WL 2106294, at *7 (N.D.N.Y. May 20, 2014) (citing N.Y. Crim. Proc. Law § 460.10(1) (affording defendant thirty days within which to file a notice of appeal)); *Plato v. Morrissey*, 638 F. Supp. 2d 338, 343-44 (W.D.N.Y. 2009). The one year statute of limitations expired on June 28, 2005. Petitioner waited until April of *2011* to file his application for coram nobis relief in the Appellate Division. Clearly the statute of limitations expired prior to petitioner filing his motion in the Appellate Division.

### 1. Statutory Tolling

Petitioner is well-aware that the statute of limitations has run, and he has attempted to explain his failure to timely apply for habeas corpus. This court will

---

[3] Respondent states that the plea minutes have not been located, but the sentencing transcript is part of the record. Petitioner is correct when he states that there is no discussion of waiver at the sentencing hearing. (Dkt. No. 10-1 at CM/ECF pp. 4-11).

[4] The court notes that 30 days from May 28, 2004 would be Sunday, June 27, 2004. Petitioner would have had until Monday June 28, 2004 to file his notice of appeal. *See Levola*, 2014 WL 2106294, at *7 (calculating petitioner's 30 day deadline from April 9, 2004 to Monday, May 10, 2004).

6

review all bases by which petitioner could be afforded the extra time that he seeks. First, petitioner is not entitled to a period of statutory tolling because he did not file any state court challenges to his conviction within the one year statute of limitations. Petitioner's attempt at filing a coram nobis application in April of 2011 did not re-start the statute of limitations because that motion was filed after the statute expired. *Bennett v. Artuz*, 199 F.3d at 120–21.

Even if the court assumed that the filing of petitioner's motion in the Appellate Division "re-started" the one year statute of limitations (which it clearly does not), petitioner's habeas corpus application would still be untimely. The Appellate Division, Fourth Department denied petitioner's motion for coram nobis relief on May 26, 2011. (Dkt. No. 10-1 at 33). The New York Court of Appeals denied petitioner leave to appeal on August 16, 2011. (*Id.* at 41). Counting from August 16, 2011, the one year statute of limitations would have expired on August 16, 2012. Petitioner states in his application that "I declare . . . under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on November 29, 2013 . . . ."[5] (Pet. at CM/ECF p.15). November 29, 2013 is more than two years after August 16, 2011, and more than one year after the statute would have expired on August 16, 2012. Thus, no statutory tolling applies, and

---

[5] The court looks to this date due to the prison mailbox rule. The Supreme Court has held that an inmate's papers may be deemed "filed" at the moment of delivery to prison authorities for forwarding to the district court. *Houston v. Lack*, 487 U.S. 266 (1988). This rule became known as the "prison mailbox rule," and has been applied to inmates filing complaints for purposes of the statute of limitations. *See Dory v. Ryan*, 999 F.2d 679, 682 (2d Cir. 1993), modified on other grounds, 25 F.3d 81 (2d Cir. 1994).

the statute of limitations has run

### 2. Equitable Tolling

The court will also consider whether this case presents one of the "rare and exceptional circumstances" that would justify equitable tolling. In order to make this showing, petitioner must "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing." *Hizbullahankhamon v. Walker*, 255 F.3d 65, 75 (2d Cir. 2001) (citation omitted). A petitioner must establish that he acted with "reasonable diligence throughout the period he seeks to toll." *Belot v. Burge*, 490 F.3d 201, 205 (2d Cir. 2007); *Doe v. Menefee*, 391 F.3d 147, 159 (2d Cir. 2004). The link of causation is broken if the person seeking equitable tolling has not exercised reasonable diligence. *Barrett v. United States*, 961 F. Supp. 2d 403, 408 (D. Conn. 2013) (citation omitted).

In this case, petitioner claims that he was not "aware" that he could apply for "coram nobis" relief until 2011, and that he believed that his "waiver" did not include the right to challenge his sentence.[6] Petitioner cites *People v. Syville*, 15 N.Y.3d 391, 912 N.Y.S.2d 477 (2010) for the proposition that petitioner could not have known until 2011 that he could apply for a writ of error coram nobis. He states that *People v. Syville* "created a remedy" that would "permit [his] redress." (Pet. ¶ 12(a)). Petitioner has misread *Syville*, its holding is not applicable to petitioner's case, and petitioner did not act with due diligence even after he became aware of this alleged remedy.

---

[6] In his application for coram nobis relief, petitioner included an affidavit from his father, also claiming that he did not understand that his son's waiver encompassed any challenges to the length of his sentence. (Dkt. No. 10-1 at 24-25) (Affidavit of Samuel Borges, dated Jan. 19, 2011).

8

Under New York law, as stated above, a defendant has thirty days from judgment or sentence to file his notice of appeal. N.Y. Crim. Proc. Law § 460.10(1). New York law also permits a defendant to seek leave to file a late notice of appeal, provided that the application is made within one year of the date that the notice should have been filed. N.Y. Crim. Proc. Law § 460.30. *See Singleton v. Lee*, No. 09-CV-6654, 2012 WL 864801, at *6 (W.D.N.Y. Mar. 13, 2012).

It has been held that these statutory time limits are "inflexible," however, New York courts have recognized two exceptions. *Singleton, supra.* In *People v. Syville*, the court held that coram nobis was available to extend the time to file a notice of appeal when (1) unjustifiable action or inaction by the prosecutor "thwarted" a defendant's diligent and good faith efforts to exercise his appellate rights within the one year time frame or (2) when the defendant's attorney failed to ***comply with a timely request for the filing of a notice of appeal and the defendant alleges that the omission could not reasonably have been discovered within the one-year period.*** *Id.* (quoting *Syville*, 15 N.Y.3d at 399, 912 N.Y.S.2d 477).

Petitioner in this case cannot avail himself of either exception stated in *Syville*. There is no claim that the prosecutor prevented petitioner from filing an appeal. With respect to the second exception, *Syville* only applies when the defendant has ***requested*** his counsel to file a notice of appeal, and counsel fails to do so. In this case, petitioner specifically signed a form, stating that he did not wish to appeal. Petitioner acknowledges that he signed this form. Thus, petitioner never requested that his attorney file a notice of appeal, regardless of petitioner's belated claim that he and his

9

father assumed that petitioner's waiver only encompassed the "merits" of the case and not the "sentence."[7] *Syville* did not "create" a remedy for petitioner in 2010. This court would point out that petitioner also had a year within which he could have asked to file a late notice of appeal under the New York Criminal Procedure Law § 460.30, notwithstanding the alleged lack of a coram nobis remedy. Petitioner has asserted no reason why he waited seven years and suddenly became aware of this new case. Petitioner cannot show that he acted in due diligence throughout the period he wishes to toll.

In *Sanders v. Chappius*, No. 12 Civ. 3339, 2013 WL 28471, at *3 (S.D.N.Y. Jan. 2, 2013), the petitioner made a very similar argument with respect to equitable tolling. He claimed that he had "no avenue to bring an effective assistance of counsel claim based on his trial counsel's failure to file a timely notice of appeal until the New York Court of Appeals rendered its decision in *People v. Syville* . . . ." *Id.* After discussing the facts and holding of *Syville*, the court in *Saunders* found that petitioner's arguments relying on *Syville* were unavailing. The court stated that even if the court adopted the petitioner's argument that he had "no remaining state avenues of relief" prior to *Syville*,

---

[7] The petitioner's sentence was negotiated as part of his plea bargain, so petitioner was well-aware of the sentence he would receive. In his affidavit in support of coram nobis relief, petitioner stated that "[a]s part of the plea offer, the court noted that : '"[b]y pleading guilty, under the terms of this plea bargain, you would give up, that means waive, will not have an appeal."'" (Dkt. No. 10-1 at 15). Petitioner then stated that the trial judge also told him that "'if anybody breaks their agreements, then you could appeal based on that.'" Petitioner received the negotiated sentence and does not allege that any of the plea agreement was broken. Although petitioner now claims that he did not really understand this statement, it seems clear to this court that petitioner was told that he "will not have an appeal." It is unclear how petitioner could have interpreted this statement as implying that he could have some sort of appeal of his negotiated sentence.

10

it would logically follow that his state remedies were exhausted, and he "accordingly could have filed his petition for habeas relief during the time period that the statute of limitations was running." *Id.* In order to justify equitable tolling, there must be a causal relationship between the "extraordinary circumstances," which would be the alleged unavailability of relief, and the lateness of his filing. *Id.* The court denied Sanders equitable tolling based on his reliance on *Syville*. The court also stated in a footnote that even prior to *Syville*, a defendant could have moved for a writ of error coram nobis, alleging ineffective assistance of appellate counsel, such as the failure to prosecute an appeal. *Id.* at *3 n.3 (citing *People v. Morales*, No. 2094/99, 2003 WL 1093005, at *5 (N.Y. Sup. Ct. Jan 23, 2003); *Boynton v. Hicks*, No. 02 Civ. 1439, 2003 WL 22087634, at *3 (S.D.N.Y. Sept. 9, 2003)).

Finally, notwithstanding the above discussion, even after petitioner filed his motion for writ of error coram nobis, which was denied by the Appellate Division, and after petitioner was denied leave to appeal by the New York Court of Appeals, petitioner still waited two years to file this habeas corpus petition. He cannot now argue that he was "unaware" of his rights, and he does not argue actual innocence.[8] In *Sanders*, the court stated that neither pro se status, nor ignorance of the law, in and of themselves, are extraordinary circumstances that merit equitable tolling. *Id.* at *4. Thus, there is absolutely no support for equitable tolling in this case, and the petition

---

[8] Petitioner acknowledged his guilt even during sentencing, and when asked if he had anything to say, he simply stated that he was "very sorry this happened." (Dkt. No. 10-1 at CM/ECF p.10). His counsel stated that petitioner was "cooperative with police and took responsibility for his conduct; . . . and that "he expressed his remorse . . . [and] that he assisted the prosecution in the trial of this case. (*Id.* at 9).

may be dismissed as untimely.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the petition be **DENIED and DISMISSED.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. These objections shall be filed with the Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.</u>** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of HHS*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

Dated: August 22, 2014

*[signature]*
Hon. Andrew T. Baxter
U.S. Magistrate Judge